As we understand it, there has been a settlement and that Mr. Staub will open and that Mr. Evans will have the full 20 minutes to respond. Is that correct? If you have anything to add on that, feel free to, but that's our understanding. I just wanted to note that we did reach the settlement, Your Honor. Yes. Yes, okay. Thank you. And you're excused or you can stay. That's up to you. All right. Okay. Mr. Staub? Good morning, Your Honor. Harry Staub on behalf of the plaintiffs, Joshua Donahue and Rebecca Bolton. I have to confess that I did have to look up what a quorum panel was and . . . Section 46D of the Judicial Code. I found it. One minute. It disappeared on me. That's okay. Take your time. We have plenty of time. All right. Okay. This case invites the court's attention to a recent significant decision in the OSHA area, that being the Acosta versus Hensel Phelps. It raises issues that are perhaps similar, perhaps related, take off from the court's decision in that case. I'm not going to go into the facts. This is a multi-employer construction site injury case. The lower court and opposing counsel, in brief to this court, a brief that otherwise is replete with a lot of factual issues that you would normally see in connection with a breach case and analysis of whether or not a breach occurred. Both the lower court and opposing counsel have tried to support the lower court's decision as predicated upon an analysis of duty, the duty being the legal issue. Macar, MAKER, encapsulates its argument on the issue of duty right at the outset of its brief with the statement, MAKER's motion for summary judgment was properly granted because there's no issue as to the applicability of OSHA regulations to MAKER. This position is based upon a series of misunderstandings with respect to the construction of the applicable OSHA provisions. The first misunderstanding is that MAKER reasons that since the entire OSHA standard set applies only to employers, that the bladed fan regulation in OSHA 1910.212A5 that is at issue in this case simply has no application because Mr. Donahue was not an employee, in fact, of MAKER. There's both a general and a specific response offered by the Henson case in connection with that argument. First of all, 29 CFR 1910.12 clearly states that the standards prescribed in this chapter apply to every employment and place of employment of every employee engaged in construction work. Each employer shall protect the employment and places of employment of each of his employees engaged in construction work by complying with these standards. The language in that section that was the employment and place of employment of every employee was critical to the decision in Acosta v. Henson. But that standard and statement in and of itself rebuts the notion that OSHA doesn't apply because MAKER was not Mr. Donahue's direct employer. This court in Henson offered a more specific response in its analysis. The analysis offered by the defense flies in the face of this court's decision in Henson and in particular this court's discussion of the role played by 29 U.S.C. 654 in prescribing the duties of employers and employees in a multiple employer construction context. This court stated while 29 U.S.C. 654 A.1 creates a general duty that runs only to an employer's own employees, section 654 A.2, which is what is at issue here, creates a specific duty to comply with all of the OSHA standards for the good of all employees on a multi-employer work site. MAKER thus clearly needed to comply with OSHA 1910.212, which sets forth both the standard and the remedy for fans that find themselves less than seven feet above the floor or the work level where they present a hazard to employees. That standard requires that the blades be shielded by guards that have openings no larger than one-half inch. Is that for all employers or just the controlling employers? Well, that was one of the things that I think the Henson case may have confused the lower court with respect to because the Henson-Phelps case was discussed in terms of controlling employer. And I think looking at that case as precedent, the lower court felt that this was the analytical model that you needed to look at. We'll talk a little bit in a minute, though, about the language in Hensel is not limited to the controlling employer. And you'll see all of the important clauses in that case refer to the creating employer or the controlling employer. Now, Hensel was a controlling employer case. Do you have a question, Judge? I mean, the defendant here was, I think, pretty clearly a creating employer. That's what we think, Your Honor. They have a special obligation and it was spelled out what a creating employer must do and how he can ameliorate the non-get-out society. So why isn't that what this case is about? That is what this case is about. And so the lower court didn't discuss this at all. This is a creating employer case. And the obligation for the creating employer, just like any hazard, just normal Louisiana duty risk analysis, any hazard that is going to be created that presents a risk, if you're the one that created the problem, OSHA requires – it's not really just ameliorate. It's like eliminate the exposure. That's how you get out from an OSHA citation. Of course, this is a tort case, not an OSHA citation case. The duty that creating employer has and does not is to not create a hazardous condition. That's correct. And then there's an example in the – I think there's two. In your book, Employer Worksites, Ron, you can go down to A and B as creating employer, and then there's an example under that. I think they have two, yeah. I think so. Which – step one, employer is a creating employer because it created a hazardous condition by damaging the guardrails. Step two, while it lacked the authority to fix the guardrails, it took a median and effective step to keep all employees away from the hazard and notify the controlling employer of the hazard. Employer, you know, is not citable since it took effective measures to prevent employee exposure to the fall hazard. I mean, doesn't that control our case? It does. It does, John. You're on it exactly. So note the language that you just read. It says – it starts with, in the step two analysis, the directive says employers must not create violative conditions. The court just – the court below just analyzed this as a general duty case. This isn't a general duty case. This is a specific OSHA violation of a specific standard. And so the reason in example two that the employer is not to be cited is that in that case, it wasn't a mailing right. The employer effectively eliminated the hazard by what he did. That's not the case here as witnessed by just the very fact that it happened again. And all of the factual things that are talked about in this case as possible amelioration, lock out, tag out, turn it off. I mean, we don't really have concrete factual evidence that any of those occurred. But those would be questions for a jury to look at to determine the reasonableness. And the standard notably just is in terms of the height of unguarded blades. It doesn't say anything about whether it's turned on or operable. That might be a greater hazard to slice people's heads open like happened to two gentlemen in this case. But the standard only involves having it there in the first place. And that's why the remedy that is stated itself in the standard is to apply guards to it, which is something that MAKER could have done. It didn't even need to get anybody's permission to do that. It had control of the platform areas. It had previously in the job directed the removal of an elevator, of some fencing, of a staircase. The staircase was very instrumental because MAKER actually moved the staircase around to a side of the platform that encouraged the employees to do exactly what they did, which was to try and shortcut their way down to get to the ground. So yes, you've jumped well ahead and gotten into exactly how we view the issues in this case. This court in Hensel, twice in quoting the standard for a controlling employer, noted that the same analytical model would apply to a creating employer. And if you think about it, just jumping over into even Louisiana duty risk, well, that makes a lot of sense. I mean, the person that actually creates the hazard, there's not notice issues. There's not anything. They created the hazard. You would expect them to have a very difficult time to get out of liability unless they can demonstrate that they completely rid the work area of the potential hazard. I don't think reasonable steps are enough. No, I don't. But in this case, that assessment is going to be something that a jury would have to look at. I mean, that's our biggest point about it. A jury can make that decision and decide, well, were there other things you could have done? And that's where we think the court erred in this action. Whatever arguments wanted to be made about reasonableness of the conduct, those should have been presented to a jury under Louisiana's comparative fault analysis, and everybody could have had their piece of the pie. We haven't reached a point in this case that you see in some of the OSHA decisions where the plaintiff's trying to argue that this is per se negligence. We're just availing ourselves of the line of Louisiana cases that say that OSHA violations can be used as indicative of negligence of the defendant. At 728 and 729 of this court's decision in Hensel, the court stated, under this policy, an employer who causes a hazardous condition, parentheses, a creating employer, and then it goes on to or a general contractor or other employer having control over a work site, may be cited for a violation. Whether or not its own employees were exposed to the hazard. I'll pick up some of this when I come back. Yes, you've saved time for rebuttal. Thank you, Mr. Vestal. Mr. Evans? And again, you now have the full 20 minutes, but you don't have to use all of it. I appreciate the benefit that's been incurred on me, and I will use it wisely. And probably not at all. Thank you. May it please the court, good morning, Your Honor. The work site here was obviously a dynamic work site. Things were going down, things were coming up. A new platform was installed to replace an old platform. The sequencing of operations is not the work of Macar. The design of the new platform versus the old platform is not the work of Macar. Macar is an assembly company. They assembled what they were told to do. They discovered during the course of their assembly that a fan was in a bad place, and they reported it. They established a lockout. A lockout is a term of art. It's very common with respect to industrial equipment or industrial environments. Lockout tags, you can buy them on Amazon. Everyone that works in this environment knows what a lockout tag is, why you use it. You can write things on a lockout tag. There was no expert testimony from Mr. Moore, the expert for the plaintiffs, that there was anything ineffective or inappropriate about a lockout. And with the lockout in place, the fan no longer was a hazard. The fan was not in a work area, and no one would have ever been injured had the lockout tag remained. Months go by. We have someone that apparently on the day of this plaintiff's accident destroyed the lockout tag. They are designed to be reversible. There are circumstances in which it's appropriate to do so. We know that Macar did not destroy the lockout tag and turn the fan back on. Is that a superseding cause? It appears to be. It certainly seems like there's no possibility that whatever shortcoming one might attribute to Macar in the first instance, and I submit there are none, could possibly have survived the improvident action of overcoming the lockout cause. So we come to a situation here where we're reflecting on the OSHA regulation, which was read earlier, and they reach businesses and individuals who were engaged in construction work. And I would submit to you, Your Honor, that Macar was not engaged in construction work at the time of this casualty. They were engaged in construction work sometimes earlier. And the idea that is advanced by the plaintiff of an ongoing duty by a creating employer to assure that what measures are undertaken, reasonable measures are undertaken to manage a worksite hazard is a continuing duty creates a remain-on-site responsibility. How could Macar make sure that the reasonable, appropriate lockout, as admitted by plaintiff's experts, remained in effect, remained managing the hazard? The only way is to remain on site. I can't imagine that there is going to be a rule of law or an argument to a jury that would place on Macar the burden for watching the lockout tag until the job is done, until everybody's gone, until the fan is taken down. That's not within their scope of work, nor is a creating employer appropriately burdened with something that is so far beyond the scope of their work contract that it requires them to allocate resources to manage contingencies that are not within their responsibility ultimately. With that, Your Honor, I think since the Louisiana arguments require some evidence of negligence, some duty in Macar, which continued months after Macar was off the site, the idea that Macar, the facts that Macar had made reasonable responses to the hazard that they observed is fully sufficient and it would be impossible for a jury to conclude that months afterwards there was some lingering scope of responsibility in Macar to manage what wasn't theirs, the lockout device located in the property which they had no care custody control of. Thank you, Your Honor. All right, thank you, Mr. Evans. Mr. Cobb, you've saved time for rebuttal. There is nothing in the OSHA multi-employer regulation that imposes the temporal limitation that's suggested by opposing counsel. If you violate the OSHA standard as was done here by constructing the new mezzanine in a manner that brought the ceiling fans to a height of less than seven feet above a work surface, that is your act of negligence. There is nothing and there are no cases cited for the proposition that that obligation ends. Kind of a trite example on my part perhaps, but I told Judge Malazzo, and she unfortunately construed it as a control issue rather than a creator issue, that if I have a group of plumbers mistakenly come to my house and dig a 10-foot deep trench at my front door and on their way out they say, oh, well, we got the wrong house and we have this 10-foot hole now, but we're warning you about it. We're very sorry and here it is. And the homeowner says, oh, that's okay. I can use this dirt somewhere. And then later in the day her husband, who hadn't been warned of anything, takes a dive into the hole. Well, we're into Louisiana duty risk at the end. We just used the OSHA violation as a predicate for negligence. This is the act of negligence that was committed. Then we move into Louisiana duty risk analysis and we say, yeah, there was a duty to avoid that negligence that was failed. Now, if in the OSHA parlance the defendant could demonstrate that they eliminated the exposure, well, then, yeah, they get off the hook. But otherwise, the act of negligence is already there and it's going to be for a jury to make its calculations of who bore responsibility for the injury that was subsequently sustained in our case by Mr. Donahue and in my hole by the husband who dropped in. So in Hensel, it was important to the court that the secretary's interpretation of the statute be analyzed. And Hensel actually quoted the 654A2 standard, the one that takes all of the OSHA standards and imposes them on all employers in a multi-employer workplace. And it said that the secretary has for decades interpreted the statute as relying on the authority that he has been granted to him by 654A2 to cite employers on multi-employer construction sites for hazardous conditions they created or controlled. That was the other location in the court's decision where creators were held to the same sort of obligation as a controlling employer who was aware. So one comment about this, well, tell us what more we could have done. That's not to ask the question correctly. That's flipping the burden of proof onto a plaintiff for the defendant whose negligence has already been established. The question is, you know, what does the OSHA standard itself say? And you can hypothesize all sorts of ways where they could have taken steps that would have eliminated the hazard. They could have removed the fan. But the standard itself tells you what to do. It tells you to install guards on the fan explicitly. So that was not anything ever discussed. You take this back into maker's place at the work site. And I think it's important to realize that so the incident to their supervisor happens on the second to last day before their contract was required to be up. So there's not any big discussion. It was a factual dispute as to whether or not there was even discussion with the property owner who denied that that discussion occurred. But they had to leave. So they got out of the job. Thank you very much. All of today's cases are under submission and the court is in recess under the usual order.